No. 88,933

STATE OF KANSAS, *Appellee,* v. JEROME G. CARTER, *Appellant.*
(91 P.3d 1162)

Opinion filed June 25, 2004.

*Libby K. Snider,* assistant appellate defender, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Jerome Carter appeals his convictions and sentences for first-degree felony murder, aggravated robbery, and criminal possession of a firearm.

These convictions followed Carter's second trial. He was originally convicted of first-degree premeditated murder, aggravated robbery, and criminal possession of a firearm; but those convictions were reversed on a claim of ineffective assistance of counsel. See *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000). Carter and his first trial counsel had disagreed over the attorney's pursuit of a guilt-based defense, despite Carter's assertions of innocence.

Four issues are now before us: (1) Did the district court properly admit portions of eyewitness testimony, including identifications, from Carter's preliminary hearing and first trial? (2) Did the prosecutor commit reversible misconduct? (3) Was there sufficient evidence to support the convictions? and (4) Did the consideration of Carter's juvenile adjudications in calculating his criminal history score violate *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)?

Carter's convictions arose out of an attempt to rob three men: Cavelle Horn, Troy Hawkins, and Carlos Johnson. According to Horn's testimony, two men entered the house the three were occupying and demanded cash. Horn told the intruders he had no money but said they could take his car keys. When one of the intruders left the house to survey the car, the three intended victims realized the second intruder was unarmed. Horn, Hawkins, and Johnson locked the door to keep the armed intruder outside and began beating the unarmed man. When the man who had gone outside heard the commotion, he attempted to break into the house through the front door. Horn and Johnson then fled through a back door, but Hawkins remained. The man outside eventually was able to reach inside the door with his gun, and he fired several shots, fatally wounding Hawkins and freeing his confederate.

After the murder, a pager found outside the house was tracked to Lelandra Sweeney, the unarmed intruder who had been beaten. When the police found Sweeney, he gave them Carter's name and a description of his car. Once the car was found, the police began surveillance of it. That surveillance led to discovery of the murder weapon in the possession of Cassandra Smith. Smith told the police that Carter was her boyfriend and that he had given the gun to her to get rid of it.

At trial, Smith testified that Carter and Sweeney left her house together on the night of the murder. They returned an hour later, and Sweeney was bleeding. The same night, Carter told her "he had dumped on somebody," which she understood to mean that he "shot at somebody, killed somebody." She also testified that Carter was wearing a yellow jacket on the night of the murder; testing performed on the jacket revealed Hawkins' DNA was on it.

Horn testified at Carter's preliminary hearing and at both of his trials. During the preliminary hearing and first trial, Horn identified Carter as the armed intruder. At the second trial, Horn testified to clear memories of many of the night's events but said he did not get a good look at the man with the gun, that he could not identify Carter, and that he did not remember doing so in earlier proceedings. The district court thereafter permitted the prosecutor to read certain portions of Horn's earlier testimony from the preliminary hearing and first trial and to question Horn about those passages.

Later, during closing argument, the prosecutor said:

"Twice under oath, within a short period of time, [Horn] positively identified the defendant. And you saw [Horn] testify last week. Did you find his testimony to be unusual? Did you find it to be interesting that . . . Horn told you that he remembered what happened, that his memory was good now? He remembered absolutely everything except he didn't remember identifying the defendant.

. . . .

"He didn't remember identifying the defendant, but he remembered everything else.

"Now what has changed with . . . Horn between 1998 and today? Has his memory gone away? No, he said his memory was still good. That's not the problem. It's not that I don't remember. I remember everything else. I just can't remember him doing it. Since that time [Horn's] become a father. He's got a three-month-old daughter. He's now a man with responsibilities which go beyond himself. He's no longer footloose and fancy-free. He has to think about other people. Did it appear to you that [Horn] was telling you the truth when he said, Uh, I don't remember, uh, identifying the defendant or saying, uh, I can't do it now, or did he appear to be afraid?"

The district court overruled a defense objection to this statement, and the prosecutor continued:

"Well that's a decision you have to make; and, you know, the judge has told you in one of the instructions, Instruction No. 2 actually, to use your common

knowledge and experience. Well, that's a lawyer's fancy way of saying use your common sense. Why would [Horn's] testimony change between then and now? You have to make that call."

In addition, the prosecutor commented on Smith's testimony in the following way:

"[W]hen [Smith] went to lie down with [Carter] he told [her] he'd killed someone, that he dumped on them. Remember, I asked her what does "dump" mean, and she said it means to shoot someone. What [Carter] didn't say [was] Lelandra killed someone. [Carter] didn't say some unknown guy killed someone. [Carter] said, I did it. I shot someone."

The defense did not object to this comment by the prosecutor.

### Admission of Earlier Identifications of Carter

Carter first argues that the district court's admission of Horn's identifications of him from the preliminary hearing and first trial violated his right of confrontation under the Sixth Amendment to the United States Constitution. In Carter's view, Horn's lack of memory made him, for all practical purposes, unavailable for cross-examination at the second trial and Carter's first trial counsel's pursuit of a guilt-based defense eliminated any incentive to cross-examine Horn closely on the earlier identifications. In short, Carter asserts that the earlier identifications were unreliable because they were tainted by his first trial counsel's unconstitutional ineffective assistance.

There can be no doubt that Horn's previous identifications of Carter were relevant, our first consideration when examining appellate challenges to a district court's admission of evidence. See *State v. Meeks*, 277 Kan. 609, 618, 88 P.3d 789 (2004); K.S.A. 60-407(f). Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. *Cf., e.g.,* K.S.A. 2003 Supp. 60-460(m) (certain relevant business writings admissible as matter of law once foundation laid); K.S.A. 60-445 (discretion to exclude relevant evidence after weighing probative value, risk of unfair prejudice). When the underlying facts are undisputed, an appellate court's review of whether a witness was available or unavailable

and whether a Confrontation Clause issue arose is de novo. See *State v. Bailey*, 263 Kan. 685, 697, 952 P.2d 1289 (1998). In this case, because Horn's testimony is of record, this court is equipped as well as the district court to determine whether his memory loss classified him as available or unavailable and whether an issue arose under the Confrontation Clause. Our standard of review is therefore de novo.

Carter relies principally on our decision in *State v. Lomax & Williams*, 227 Kan. 651, 608 P.2d 959 (1980). In *Lomax*, a witness identified the defendant at an earlier preliminary hearing in a related case. When the defendant went to trial, however, the witness denied any memory of the events in question. The prosecution then sought admission of her prior preliminary hearing testimony from the related case. On appeal, we held that, in order for the witness' prior testimony to be admissible at the trial, the district court must have determined that she was then present and available for cross-examination. We concluded that, even though the witness was physically present for trial, she was unavailable for cross-examination because "she simply refused to testify." Her consistent responses of "I don't know" or "I don't recall" on all pertinent points made her just as unavailable as though her physical presence could not have been procured. As a result, her earlier testimony, untested by defendant's counsel's opportunity for cross-examination, was inadmissible. 227 Kan. at 656-62.

Carter believes his circumstances are comparable. Any prior opportunity for his counsel to cross-examine Horn was hampered by his first trial counsel's strategy and therefore inadequate. This means the State could not meet the requirements of K.S.A. 2003 Supp. 60-460(c)(2), which permits prior testimony of an unavailable witness to be admitted only if "the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered . . . ." In addition, Carter emphasizes the United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). *Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S.

Ct. 2531 (1980), in part and reinforced the necessity of a prior opportunity for confrontation through cross-examination to protect criminal defendants forced to combat hearsay from prosecution witnesses.

For its part, the State first asserts that this issue was not preserved for appeal. We have carefully reviewed the record and conclude that Horn's second trial counsel sufficiently challenged the prosecutor's questions based on the earlier identifications, repeatedly objecting that Horn's earlier statements could not be cross-examined properly.

On the merits, the State argues that this case is distinguishable from *Lomax* and more similar to *State v. Osby,* 246 Kan. 621, 793 P.2d 243 (1990). In *Osby,* the defendant claimed error because the district court admitted the testimony of two witnesses from related trials. We distinguished *Lomax,* in which the witness refused to answer *all* questions; the *Osby* witnesses instead selectively remembered details of the incident. We held the witnesses were not unavailable, and their contradiction of their prior testimonies meant extrinsic evidence of those prior testimonies could be admitted. *Osby,* 246 Kan. at 631-33 (citing *State v. Hobson,* 234 Kan. 133, 146-47, 671 P.2d 1365 [1983]). It was enough that the defense attorney had the opportunity to cross-examine the witnesses and ask them to "identify, explain, or deny the prior testimony" under K.S.A. 60-422. *Osby,* 246 Kan. at 630-31.

We agree with the State that this case is more similar to *Osby* than to *Lomax.* Horn selectively remembered many details of the incident. He was available for cross-examination in the second trial, meaning neither K.S.A. 2003 Supp. 60-460(c)(2) nor *Crawford* was implicated. Rather, admission of his earlier sworn testimony was governed by K.S.A. 2003 Supp. 60-460(a), which reads:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

"(a) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

Moreover, as in *Osby*, 246 Kan. at 631, " 'extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness,' " was admissible here as long as Horn was given an opportunity to explain. See K.S.A. 60-422(b) (such statements excludable in discretion of court if witness given no such opportunity). Horn's examination left him plenty of room to explain if he were inclined to do so.

The district court did not err in ruling on Carter's objections to the introduction of Horn's earlier identifications. See also *State v. Manning*, 270 Kan. 674, 689-90, 19 P.3d 84 (2001) (*Osby* applied to witness' selective memory; district court could employ discretion to admit prior statement to police even though trial testimony did not qualify as "affirmative, contradictory, and adverse").

### *Prosecutorial Misconduct*

Carter claims that the prosecutor committed misconduct during closing argument when commenting on the change in Horn's testimony and on Smith's reference to Carter "dumping" on someone. The State argues that the prosecutor's statements merely pointed out reasonable inferences that could be drawn from the evidence presented at trial.

We first note:

"No rule governing oral argument is more fundamental than that requiring counsel to confine remarks to matters in evidence. The stating of facts not in evidence is clearly improper. However, in summing up a case, a prosecutor may draw reasonable inferences from the evidence and is allowed considerable latitude in discussing the evidence." *State v. Heath*, 264 Kan. 557, Syl. ¶ 12, 957 P.2d 449 (1998).

To determine whether a prosecutor's closing remarks have constituted prosecutorial misconduct, we have applied what we describe as a two-step analysis:

"First, we consider whether the remarks are outside the considerable latitude allowed to the prosecutor in discussing the evidence. The prosecutor is given wide latitude in both the language and the manner of presentation of closing argument so long as the argument is consistent with the evidence. Second, we must determine whether the remarks constitute plain error. Plain error occurs when the prosecutor's remarks are so gross and flagrant as to prejudice the jury against the

defendant and deny the defendant a fair trial, requiring reversal. [Citation omitted.]

"A prosecutor's remarks during closing argument are so gross and flagrant that they deny the defendant a fair trial when the reviewing court, using a harmless error analysis, finds that the error would have changed the result of the trial. Otherwise, the court must be willing to declare beyond a reasonable doubt that the error was harmless. [Citation omitted.]" *State v. Ly*, 277 Kan. 386, 392-93, 85 P.3d 1200 (2004).

The prosecutor's comment on Horn's change of heart did not constitute a comment on matters not in evidence; rather, it merely guided the jury to a reasonable inference that could be drawn from the evidence. Horn had identified Carter as the armed intruder during his earlier testimony. At Carter's second trial, Horn testified that his daughter was born between the two trials. Further, despite his clear memory of many of the details of the night of the murder, he could no longer recall whether Carter committed the crime or even whether he had ever testified as much. The prosecutor's suggestion that Horn's new family responsibilities could connect the dots between his testimony at the first trial and his testimony at the second trial was within the wide latitude granted the prosecutor in making closing argument.

Similarly, the prosecutor's comment on Smith's testimony did not constitute misconduct. The prosecutor merely repeated, nearly verbatim, Smith's description of what Carter said and what Smith understood Carter to mean.

### Sufficiency of the Evidence

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

Viewing the evidence introduced in Carter's second trial in the light most favorable to the prosecution, we have no trouble sustaining his convictions. They were supported by ample direct and circumstantial evidence, such that a rational factfinder could have found Carter guilty of the three offenses beyond a reasonable doubt.

*Consideration of Juvenile Adjudications in Calculating Criminal History Score*

We have previously rejected Carter's last contention: That considering his juvenile adjudications in calculating his criminal history score violates *Apprendi v. New Jersey*, 540 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

In *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003), we held that juvenile adjudications "enjoy ample procedural safeguards" and are therefore encompassed in the *Apprendi* exception for enhancement of criminal sentences because of prior crimes. Carter concedes that *Hitt* is controlling unless we choose to overrule it. We decline his invitation to do so. See *State v. Norton*, 277 Kan. 432, 443, 85 P.3d 686 (2004).

Affirmed.