NOT DESIGNATED FOR PUBLICATION

No. 118,131

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SERGIO GUERRA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed September 14, 2018. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.


PER CURIAM:  Sergio Guerra appeals from his jury convictions for aggravated kidnapping and aggravated robbery. On appeal, Guerra contends that the State committed prosecutorial error during closing arguments, that the district court erred by failing to give an additional lesser included instruction, and that the State failed to present sufficient evidence of aggravated robbery. He also asserts cumulative error. However, based on our review of the record, we find no reversible error. Rather, we find that Guerra received a fair trial. Thus, we affirm his convictions for aggravated kidnapping and aggravated robbery.

1

On March 24, 2016, D.B.—an adult female—was working at a convenience store on Richards Drive in Manhattan. Around 10 p.m., Guerra entered the store and began making flirtatious comments and harassing D.B. This went on for several minutes before Guerra eventually left the store. About an hour and a half later at the end of her shift, D.B. left the convenience store and went to her car.

As D.B. was getting into her car, Guerra approached and began asking for a ride. Although she declined, Guerra continued to ask D.B. for a ride and she continued to refuse. Instead of walking away, Guerra opened D.B.'s car door, punched her, and pushed her into the front passenger seat. He also grabbed D.B.'s cell phone out of her hand. Guerra got into the driver's seat and D.B. told him he could have the car if he wanted. However, Guerra did not respond and drove away with D.B. still in the car.

D.B. attempted to escape by jumping out of the moving car but Guerra grabbed her jacket to prevent her from getting out. Unfortunately, D.B. was stuck partially outside the car and was dragged along the roadway. Rather than slowing down, Guerra continued driving through an intersection and on to Fort Riley Boulevard. While Guerra dragged her, D.B. struggled to get loose and screamed for help.

Fortunately, a soldier—Alberto Duran-Espino—who was also driving on Fort Riley Boulevard saw D.B. dragging from a car as it was being driven on the highway. Duran-Espino also noticed that the driver of the car was driving erratically. Duran-Espino attempted to get the driver's attention, but he would not stop. Acting quickly, Duran-Espino pulled his vehicle in front of D.B.'s car to block Guerra's movement. Duran-Espino got out of his vehicle and freed D.B. However, Guerra drove away in D.B.'s car before Duran-Espino could detain him. Duran-Espino was able to get the license plate number and called 911.

Paramedics treated D.B. at the scene for her injuries and transported her to the hospital for treatment. D.B. suffered road rash to her feet, legs, arms, and back, but no broken bones. Although she was released from the hospital within a few hours, the record reflects that she did not fully recover from her injuries for several months.

Later that night, the Riley County police located D.B.'s car at a trailer park. After an extensive investigation, Guerra was arrested and charged with aggravated kidnapping, aggravated robbery, and aggravated battery. On May 23, 2016, the State amended its complaint to add a charge of attempted rape. Subsequently, the State dropped the aggravated battery charge.

The district court convened a three-day jury trial on April 19, 2017. The State presented the testimony of 13 witnesses, including D.B., Duran-Espino, and the investigating officers. The State further offered the testimony of Duran-Espino's fellow soldier, Victor M. Boswell, who was in Duran-Espino's car and witnessed Guerra dragging D.B. The State also presented more than 50 exhibits that the district court admitted into evidence, including photos and forensic evidence. Guerra exercised his right not to testify and presented no evidence at trial.

In addition to instructing the jury on the charges of aggravated kidnapping, aggravated battery, and attempted rape, the district court instructed the jury on the lesser included offenses of kidnapping and robbery. After deliberations, the jury acquitted Guerra on the charge of attempted rape. However, the jury convicted him of aggravated kidnapping and aggravated robbery. On June 19, 2017, the district court sentenced Guerra to a controlling sentence of 653 months of prison time, with 36 months of postrelease supervision.

ANALYSIS

*Prosecutorial Error*

For his first issue on appeal, Guerra contends that the prosecutor committed reversible error during closing arguments. In response, the State contends that there was no prosecutorial error. Likewise, the State contends that the statements made by the prosecutor are not evidence and did not prejudice Guerra's right to a fair trial.

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), the Kansas Supreme Court set forth the standard of review for prosecutorial error. Under the *Sherman* standard, we use a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

Even if a prosecutor's statements or actions constitute error, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. *Sherman*, 305 Kan. at 114. Moreover, the extent of any ameliorating effect of an admonition given to a jury by a district court must be considered in determining whether the erroneous statements or conduct prejudiced the defendant's right to a fair trial. *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015).

As Guerra correctly points out, it is error for a prosecutor to ask jurors to use their "gut instinct" to find a defendant guilty instead of using a beyond a reasonable doubt standard. *State v. Brinklow*, 288 Kan. 39, 49-50, 200 P.3d 1225 (2009). However, we must consider the statements made by a prosecutor during closing arguments in the context in which they were made rather than in isolation. *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017). In particular, we recognize that a prosecutor is given wide latitude to draw inferences from the evidence. *State v. Carter*, 278 Kan. 74, 80, 91 P.3d 1162 (2004). This includes inferences about motive. *State v. Brown*, 298 Kan. 1040, 1052-53, 318 P.3d 1005 (2014).

Here, Guerra complains of two statements made by the prosecutor during closing arguments. The prosecutor made the first statement while discussing the attempted rape charge on which the jury ultimately acquitted Guerra. Specifically, the prosecutor said:

> "Attempted rape: Did the defendant commit an overt act toward that commission? Did he do so with the intent to commit rape, and did he fail to complete it? And you will get an instruction, but there's the rest of the instruction you will get, which will be on the elements of a completed crime of rape.

> "Why did the defendant force his way into [D.B.'s] car at around 11:20 on March 24th, 2016? Is there physical evidence of an intent to commit rape? No, not really.

5

"I mean, there's a reason though, we select members of the community to decide cases. Not only is it constitutionally required but there's a reason. We don't just plug a set of facts into a computer, because *we want the gut reaction of people*. Remember Instruction No. 4 says use your *common knowledge and experience*." (Emphases added.)

The prosecutor went on to talk about the circumstantial evidence that he believed showed that Guerra intended to rape D.B. Given this context, the prosecutor's statement regarding "gut reaction of people" was not addressing the definition of reasonable doubt or asking the jurors to disregard the jury instructions. Rather, he used the statement to highlight the jury's duty to apply its collective common knowledge and experience to the circumstantial evidence presented at trial. Thus, we do not find that this statement—when viewed in context—falls outside the wide latitude afforded to prosecutors nor did it offend Guerra's constitutional right to a fair trial.

In responding to the closing argument made by Guerra's attorney to caution against using gut instinct, the prosecutor said in his rebuttal:

"Ms. Jordan is right when she says *I suggest you use your gut instinct, because that's part of your common experiences.* Looking at the evidence. What did he want when she told him no, no, no, no? When he wanted a ride, what did he want when he entered that vehicle? When he first pushed her over and got in that vehicle and started to exit that parking lot, what did he want? He did not want a ride to the motel across the street." (Emphasis added.)

This argument also related to the charge of attempted rape. Again, the prosecutor was asking the jury to use its common experiences when viewing the evidence presented at trial. In other words, the prosecutor was asking the jury to make reasonable inferences about the motive behind Guerra's actions on the night in question in the context of attempted rape. Within this context, we do not find that the statements made during rebuttal argument fell outside the wide latitude afforded to prosecutors nor did they offend Guerra's constitutional right to a fair trial.

Although we do not find that the arguments in question rose to the level of prosecutorial error, they did not prejudice Guerra's right to a fair trial even if we had found them to be erroneous. In particular, we find it significant that the prosecutor made the statements in question when he was discussing the elements that the State must prove to obtain a conviction on the charge of attempted rape. After considering the circumstantial evidence presented at trial, the jury found Guerra to have been not guilty of attempted rape. As such, even though we would not encourage prosecutors to use phrases such as "gut instinct" or "gut reaction" during closing arguments, we do not find that Guerra suffered prejudice as a result of the prosecutor's statements.

A review of the record also reveals that the evidence that Guerra committed the crimes for which the jury convicted him was overwhelming. Regardless of whether Guerra intended to commit rape when he entered D.B.'s car without permission, the evidence that he intended to cause bodily harm to D.B. when he forcefully entered and ultimately took her car is strong. Specifically, the jury heard evidence that Guerra punched D.B. and pushed her into the passenger seat of her car. The jury also heard evidence that Guerra took D.B.'s cell phone from her, prevented her from escaping from the vehicle, and dragged her along the roadway as she was dangling out of her car. Further, the jury heard evidence that Guerra did not slow down as he dragged D.B. along a city street but instead he sped up and entered a highway.

Moreover, the jury instructions in which the district court accurately set forth the State's burden to prove each of the charges against Guerra beyond a reasonable doubt mitigated any potential prejudice. Similarly, the district court instructed the jury that the statements and arguments of counsel were not evidence and that they were to make their decision based on the evidence presented at trial. The district court also appropriately instructed the jurors that they could use their common knowledge and experience.

In addition, Guerra's attorney cautioned the jury against the use of a mere gut instinct and it appears that it heeded her advice in acquitting Guerra of attempted rape. The prosecutor also reminded the jury that they were to decide the case based on the evidence and not on the statements of counsel. Accordingly, even if we considered the prosecutor's remarks to be erroneous, they did not prejudice Guerra's right to a fair trial under the circumstance presented.

*Criminal Restraint Instruction*

Next, Guerra contends that the district court erred by failing to give the jury an instruction on criminal restraint as a lesser included offense of aggravated kidnapping. However, Guerra concedes that he failed to object or request a lesser included instruction, and thus, the clearly erroneous standard applies. We use a two-step process in determining whether the failure to give a particular instruction was clearly erroneous: (1) We must determine if the instruction in question was legally and factually appropriate based on a review of the entire record; (2) if we find that the instruction was legally and factually appropriate, we next must decide if we are "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). The party claiming error in the instructions—in this case Guerra—has the burden to prove the degree of prejudice necessary for reversal. See *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016); see also *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

Here, the district court not only instructed the jury on the charge of aggravated kidnapping but also on the lesser included offense of kidnapping. Ultimately, the jury found Guerra guilty of aggravated kidnapping beyond a reasonable doubt. Nevertheless, Guerra argues on appeal that the district court should have also instructed the jury on the crime of criminal restraint, which is a lesser included offense of kidnapping. *State v. Ramirez*, 299 Kan. 224, Syl. ¶ 3, 328 P.3d 1075 (2014). For the purposes of this appeal,

8

we will consider a criminal restraint instruction to be both legally and factually appropriate. Thus, we will turn to the question of whether we are firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.

Regardless of the appropriateness, the district court did not clearly err by failing to offer a criminal restraint conviction. Guerra carries the burden to prove that the district court's failure to include a criminal restraint instruction was clearly erroneous.

A review of the record in this case reveals overwhelming evidence against Guerra to support his conviction for aggravated kidnapping. Even with D.B. screaming as he dragged her along a street and highway, Guerra did not stop or even slow down. In fact, there is evidence in the record to suggest that Guerra sped up as he pulled onto Fort Riley Boulevard. Although Guerra suggests that the jury wanted to convict him to avoid allowing his behavior to go unpunished, we do not find this argument to be persuasive because the jury could have chosen to convict him of the lesser included offense of kidnapping on which they were instructed. If the jurors simply wanted to punish criminal activity, it is unlikely they would have picked the higher crime. Regardless, we are not firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. Thus, we conclude that the district court did not commit clear error.

*Sufficiency of Evidence—Aggravated Robbery*

Guerra also contends that the State failed to present sufficient evidence at trial upon which the jury could convict him of aggravated robbery beyond a reasonable doubt. "'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

9

In order to prove that a defendant is guilty of aggravated robbery, the State must establish each the following elements beyond a reasonable doubt:

(1) the defendant knowingly took property from D.B.;

(2) the taking was by force or threat of bodily harm to D.B.;

(3) the defendant was armed with a dangerous weapon or inflicted bodily harm on any person in the course of such conduct; and

(4) the act occurred in the proper venue.

See K.S.A. 2017 Supp. 21-5420(b).

Interestingly, Guerra does not appear to be arguing that the State failed to present sufficient evidence of each of the elements of aggravated robbery. Instead, Guerra appears to only be challenging the order of events.

"'[T]o constitute a taking, the prospective robber must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired adverse to the rights of the owner therein.' *State v. Valdez*, 266 Kan. 774, 786, 977 P.2d 242 (1999). Asportation [the detachment, movement, or carrying away of property] is not required to complete a taking. 266 Kan. at 787 (holding that taking of car had occurred when owner's unconscious body in back seat of vehicle). A taking is incomplete when it 'is immediately resisted by the owner before the thief can remove [the property] from the premises or the owner's presence.' *State v. Long*, 234 Kan. 580, 586, 675 P.2d 832 (1984)." *State v. Brown*, 300 Kan. 542, 557, 331 P.3d 781 (2014).

Here, viewing the record in a light most favorable to the State, a reasonable jury could conclude that Guerra took complete, independent, and absolute control of D.B.'s car once she was hanging outside the vehicle after trying to escape. In the alternative, a reasonable jury could conclude that Guerra completed the aggravated robbery when he drove away with her car after he had pushed, punched, and dragged D.B. along the

roadway. Either way, we find the evidence presented at trial to be sufficient to establish beyond a reasonable doubt that Guerra committed the crime of aggravated robbery.

*Cumulative Error*

Finally, Guerra argues that cumulative errors prevented him from receiving a fair trial. In assessing the cumulative effect of errors during the trial, we examine any errors that occurred at trial in the context of the entire record, considering how the district court dealt with the errors as they arose. We also consider the nature and number of errors and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Our review to resolve cumulative error issues is unlimited. *State v. Roeder*, 300 Kan. 901, 939, 336 P.3d 831 (2014).

Here, we have not found that Guerra has established any error—much less cumulative error. Rather, a review of the record reveals that Guerra received a fair trial. We, therefore, affirm Guerra's convictions.

Affirmed.