NOT DESIGNATED FOR PUBLICATION

No. 117,828

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEQUAN LYNDELL JOHNSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed October 26, 2018. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Jequan Lyndell Johnson appeals from his conviction for two counts of aggravated robbery. Johnson raises the following issues on appeal: whether the district court properly admitted evidence regarding the prior certainty of a witness and whether the district court properly instructed the jury. Finding no errors, we affirm.


FACTS

Following a brief trip to Colorado, Jessey Loux and his fiancée, Megan Clark, returned to their apartment in Olathe, Kansas. Upon their return, Loux called his friend,

1

Dejongh DeLarge-Kimball, to let him know that he was back and inviting him over to the apartment. DeLarge-Kimball arrived about an hour later but forgot to lock the door behind him as he usually did when entering Loux's apartment.

Approximately 20 to 30 minutes after DeLarge-Kimball's arrival, four men, three black and one white, burst through the door of the apartment. Two of the men were armed and all four were covering the lower half of their faces with either a bandana or a t-shirt so that only their eyes and foreheads were visible. When the men entered, DeLarge-Kimball and Loux were sitting in the living room with Loux's infant child. Clark was in the bathroom taking a shower.

After entering the apartment, the four men ordered Loux and DeLarge-Kimball onto the floor and began beating them while simultaneously brandishing their weapons and demanding "the money." The white man then proceeded down the hallway and yanked Clark out of the shower, pushing her to the floor, and pointing a gun at her head. As she was lying on the floor, Clark grabbed her cell phone and threatened to call the police. One of the black men wrestled the phone away from her and then proceeded towards the back bedroom where Clark and Loux's older two children were sleeping. Seeing this, Clark jumped up and tried to get between the men and the door to the children's room, begging the men to not go in. However, the men continued pushing her back to the floor until one of the other black men walked up and, calling Clark by name, told her to go to her kids.

DeLarge-Kimball testified that when Clark heard one of the men say her name, Clark reportedly took a closer look at the man and then began to yell that "she thought [it] was [Johnson]." After Clark began shouting Johnson's name, the four men quickly fled from the apartment. Clark tried to chase after them but was unable to catch up to them before they disappeared. In total, the men were in the apartment for between two and five

2

minutes and managed to take a Playstation 3, a tablet computer, a firearm, and Loux's and Clark's cell phones.

Having lost their cell phones to the attackers, Loux and Clark used DeLarge-Kimball's to call 911. Multiple people spoke with the 911 dispatcher including Loux, who identified one of the four men as Jequan Johnson. Minutes later, the police arrived on the scene and began interviewing Loux and Clark separately. Loux spoke with Officer Chad Kennett, and Clark spoke with Detective Carson Spegal. During the course of those interviews, both Clark and Loux identified Johnson as one of the four men who was in their apartment that night.

After collecting initial statements at the scene, police informed Loux, Clark, and DeLarge-Kimball that they would need to go to the police station to complete more thorough interviews. None of them wanted to go, but they eventually agreed to do so after feeling pressured by the police. At the police station, all three were taken to separate interview rooms and spent the next five to six hours being interviewed by either Detective Spegal or Detective James McMillian of the Olathe Police Department. During the interviews at the police station, Loux, Clark, and DeLarge-Kimball again, albeit somewhat reluctantly, identified Johnson as one of the four men. At the station Clark told officers that she "was 100 percent sure" that Johnson was involved.

Despite their statements to police on the night of the incident, Loux, Clark, and DeLarge-Kimball all testified at both the preliminary hearing and the trial that Johnson was not involved in the robbery. In fact, all three denied even telling the police that Johnson was one of the robbers and stated that they felt pressured and coerced by police into identifying Johnson. Following these denials, the State confronted each witness with their prior statements to police. Specifically, the State elicited testimony from Clark in which she confirmed, after refreshing her memory, that she told Detective Spegal that she was 100 percent sure that Johnson was involved in the robbery. That testimony was

admitted, over Johnson's objection, for impeachment purposes as a prior inconsistent statement. The district court subsequently gave the jury a limiting instruction that Clark's statement should not be considered as "to the certainty of the identification."

At the close of trial, the jury convicted Johnson of two counts of aggravated robbery. The district court sentenced Johnson to a total of 100 months in prison. Johnson has filed a timely appeal of his convictions.

ANALYSIS

On appeal, Johnson raises two issues. First, he argues that the district court erred when it allowed the State to admit evidence that Clark previously told police that she was 100 percent sure that Johnson was involved in the robbery. Second, he argues that the district court erred when it instructed the jury that its verdict "must be founded entirely upon the evidence admitted and the law as given in [the jury] instructions." We will deal with each issue in turn.

*Clark's testimony*

For his first issue on appeal, Johnson argues that the district court erred when it allowed the State, over his objection, to admit evidence that Clark previously told police she was 100 percent sure that Johnson was involved in the robbery. Citing *State v. Mitchell*, 294 Kan. 469, 471, 275 P.3d 905 (2012). Johnson contends that the certainty of a witness is immaterial and therefore inadmissible. However, before reaching the merits of this argument, we must first determine whether Johnson properly preserved this issue for appeal.

During its direct examination of Clark, the State sought to introduce testimony that she was 100 percent certain that Johnson was involved in the robbery. Defense counsel

4

objected (hereinafter direct objection), arguing that under *Mitchell*, the certainty of a witness was immaterial and therefore inadmissible. That direct objection was overruled but, despite receiving a favorable ruling, the State chose not to ask Clark about the certainty of her identification and instead simply moved on with its direct examination.

During redirect, however, the State asked Clark a second time about the certainty of her identification. Defense counsel again objected (hereinafter redirect objection), stating, "Register—I guess, we've taken this up. But I think this goes beyond the scope of my cross[-examination]." The district court overruled defense counsel's redirect objection, finding that it was "within the scope" of cross-examination. Johnson argues that by referencing his direct objection and the district court's ruling with his redirect objection, he properly preserved this issue for review. The State counters by arguing that Johnson waived his admissibility argument because his redirect objection failed to renew his direct objection and was instead only made on the grounds that the redirect was outside the scope of cross-examination.

To preserve an evidentiary issue for appellate review, "'[a] party must make a timely and specific objection to the admission of evidence at trial.'" *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). Under K.S.A. 60-404:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

One purpose of this contemporaneous objection requirement is to give the district court the opportunity "to conduct the trial without exposure to tainted evidence, thus avoiding possible reversal." *State v. Spagnola*, 295 Kan. 1098, 1102, 289 P.3d 68 (2012). Therefore, "only an objection raised at the time the evidence is offered satisfies the

5

contemporaneous objection requirement." *State v. Daniels*, 28 Kan. App. 2d 364, 365, 17 P.3d 373 (2000). Further, "Kansas does not follow the rule that if an earlier objection is overruled, repeated objections are not required." *McKissick v. Frye*, 255 Kan. 566, 582, 876 P.2d 1371 (1994). As such, absent a continuing objection, "[a]n objection is waived by the failure to renew it when the question is repeated." *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1056, 940 P.2d 84 (1997).

The other purpose of the contemporaneous objection requirement is to provide the trial court with a "specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009) (party may not object on one ground at trial and argue another on appeal). That purpose may be served by clearly stating the grounds for an objection at the time it is made or by referring to arguments made earlier in the proceedings. See *State v. Barber*, 302 Kan. 367, 373-74, 353 P.3d 1108 (2015); *State v. Inkelaar*, 293 Kan. 414, 421-23, 264 P.3d 81 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Regardless of how an objection is made, the controlling consideration is whether it "was sufficient to inform the trial court of the legal basis for the objection" so as to allow the trial court to fully consider its merits. *Barber*, 302 Kan. at 373-74 (party's objection that referred to arguments made during pretrial hearing was sufficient to preserve issue for appeal because it informed trial court, and Court of Appeals, that no new arguments were being raised and allowed trial court to reconsider its previous ruling).

In this case, the State first sought to introduce testimony regarding the certainty of Clark's prior identification during its direct examination of her. Defense counsel objected on the grounds that the certainty of a witness was inadmissible. Following a brief bench conference, in which the district court heard arguments from both sides, defense counsel's direct objection was overruled and the State was permitted to ask its question. But after

going back on the record, the State chose not to ask about the certainty of Clark's identification and instead simply moved on with its direct examination. On redirect, however, the State did ask Clark about the certainty of her prior identification. Defense counsel objected again, on grounds that the question was beyond the scope of his cross-examination of Clark. In doing so, Johnson argues, he satisfied the contemporaneous objection requirement by referring to his direct objection with the words, "I guess we've taken this up," and therefore properly preserved this evidentiary issue for appeal.

However, Johnson's argument is undercut by the district court's response to his redirect objection in which it stated that it thought the State's question was "within the scope" of defense counsel's cross-examination. That response makes it clear, as the State correctly argues, that the district court did not believe that defense counsel's redirect objection was renewing the direct objection and instead believed that it was an entirely new objection based on the question being outside the scope of cross-examination. Notably, defense counsel did not ask for either clarification or supplementation of the district court's ruling, nor did he ask that his direct objection be considered a continuing objection throughout the trial, in order to better anchor his objection in the record. In light of the vagueness of the statement and the district court's response to the redirect objection, it was clearly insufficient to inform the district court of the legal basis for the objection and provide the court with an opportunity to fully consider its merits. See *Barber*, 302 Kan. at 373-74. As a result, we believe Johnson failed to satisfy the contemporaneous objection requirement of K.S.A. 60-404 and therefore failed to properly preserve this evidentiary issue for appeal.

Though this lack of an adequate contemporaneous objection is, in our view, fatal to Johnson's argument, in the interests of completeness and in the event of subsequent review, we have decided to address the merits of the issue. Assuming, arguendo, that the issue was properly preserved for review, we will consider whether the district court erred in admitting evidence regarding the certainty of Clark's prior identification of Johnson.

7

Kansas courts review the admission or exclusion of evidence under a three-step process. *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 (2010). First, the court must determine if the evidence is relevant, which K.S.A. 60-401(b) defines "as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; [whereas] materiality is judged under a de novo standard." 290 Kan. at 817. The second step requires the court to review de novo the district court's determination of which rules of evidence or other legal principles apply. Finally, the court must review the district court's application of the relevant rules and principles under either an abuse of discretion or de novo standard, "depending on the rule or principle that is being applied." 290 Kan. at 817.

As we have noted, Johnson first argues that under *Mitchell*, the certainty of a witness is immaterial and therefore the district court erred when it allowed the State, over his objection, to admit evidence that Clark previously told police that she was 100 percent sure that Johnson was involved in the robbery. The State counters by arguing that the *Mitchell* court removed the "degree of certainty" language from the eyewitness identification jury instruction to avoid placing undue emphasis on the factor, not to prohibit its admission or remove it from the purview of the jury. Therefore, the State argues Clark's statement is not immaterial and is clearly admissible as a prior inconsistent statement.

In *Mitchell*, the defendant was accused of aggravated robbery for allegedly kicking in the door of an apartment, attacking the resident, and stealing some money before running away. The police were called, and when they arrived the victim described his assailant as a 6-foot tall, 270-pound, African-American man with short hair and a goatee. Based on that description, the police created a photo lineup that featured six different men who matched the description provided by the victim. The victim quickly identified the defendant as his assailant and, when prompted by the police, wrote next to the picture that the defendant was "'100% the person who robbed me.'" 294 Kan. at 471. At trial, the

8

victim identified the defendant, again, as his attacker and testified that he had seen the defendant at least four times before the robbery, had bought cocaine from the defendant on at least two occasions, and allowed the defendant to spend the night at his house at least once. The photo lineup, which included the victim's statement that the defendant was "100% the person who robbed me," was also admitted without objection. 294 Kan. at 471, 473.

At the close of trial, the cautionary eyewitness identification instruction from PIK Crim. 3d 52.20 was issued without modification. That PIK instruction read:

> "'The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove (he) (she) has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you first should determine if any of the following factors existed and, if so, the extent to which they would affect the accuracy of the identification by an eyewitness. Factors you may consider are:
>
> (1) The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting;
>
> (2) The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence;
>
> (3) Whether the witness had observed the defendant on earlier occasions;
>
> (4) Whether a significant amount of time elapsed between the crime charged and any later identification;
>
> (5) Whether the witness ever failed to identify the defendant or made any inconsistent identification;
>
> (6) *The degree of certainty demonstrated by the witness at the time of any identification of the accused*; and
>
> (7) Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification.'" 294 Kan. at 475.

9

Based in part on this instruction, the jury found the defendant guilty of aggravated robbery. 294 Kan. at 473; see also *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008) ("A jury is presumed to follow the instructions given to it."). The defendant appealed, arguing that "the district court committed reversible error when it denied his request to delete the sixth factor [of the PIK instruction] pertaining to witness certainty." *Mitchell*, 294 Kan. at 475-76.

On appeal, the Kansas Supreme Court began by reaffirming its continued belief that "the best approach is to leave the reliability determination to the jury and allow the parties to challenge the eyewitness identification testimony at trial as the circumstances warrant." 294 Kan. at 479. However, it also acknowledged that the relationship between witness certainty and witness accuracy was a complicated inquiry. In light of the heightened level of concern surrounding the witness certainty factor, the court held that the PIK Crim. 3d 52.20 language, as worded at the time, "encourage[d] jurors to give more weight to identifications by a certain witness than an uncertain one and [did] nothing to inform the jury that certainty evidence may be unreliable." 294 Kan. at 481. Therefore, the court concluded, "it [was] error to instruct the jury on the degree of certainty factor," and its future use was discouraged. 294 Kan. at 481.

Johnson argues that the *Mitchell* court stands for the proposition that not only should the jury not be instructed to consider the certainty of a witness when weighing eyewitness testimony, but that the jury should not consider witness certainty at all when weighing witness credibility and therefore evidence of witness certainty is immaterial. However, that argument misstates the holding in *Mitchell*. The Supreme Court's ruling does not prohibit the admission or consideration of witness certainty but rather removes language from the PIK instruction so as not to place undue emphasis on a witness' degree of certainty. See 294 Kan. at 481.

In fact, the *Mitchell* court went out of its way to emphasize its continued belief that "the best approach is to leave the reliability determination to the jury and allow the parties to challenge the eyewitness identification testimony at trial as the circumstances warrant." 294 Kan. at 479. And given that the central issue in this case was whether Johnson was one of the four men who robbed Clark and Loux's apartment, Clark's statement regarding her degree of certainty in her identification of Johnson is clearly material because it goes directly to that issue. As such, we believe Johnson's argument based on the Kansas Supreme Court's decision in *Mitchell* is entirely without merit.

Johnson also argues, briefly, that the district court erred when it admitted Clark's 100 percent sure statement as a prior inconsistent statement. The State counters by arguing that Clark's statements to police on the night of the incident and her trial testimony were clearly inconsistent with each other and therefore the district court properly admitted her 100 percent sure statement under K.S.A. 60-422 as a prior inconsistent statement.

Pursuant to K.S.A. 60-422(b), as it affects the credibility of a witness, "extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him or her an opportunity to identify, explain or deny the statement." See also *State v. Carter*, 278 Kan. 74, 80, 91 P.3d 1162 (2004) (extrinsic evidence of witness' prior contradictory statements was admissible "as long as [the witness] was given an opportunity to explain").

Here, Clark told police on the night of the incident that Johnson was one of the four men who robbed her apartment and even went so far as to say that she was 100 percent sure of her identification. However at trial, Clark testified that Johnson was not one of the four men who robbed her. Those statements are clearly inconsistent with one another and are therefore admissible, pursuant to K.S.A. 60-422, as long as Clark was

11

given an opportunity to explain the discrepancy. Clark was given just such an opportunity both when she was examined by the State on redirect and when she was cross-examined by defense counsel. Indeed, Clark took full advantage of those opportunities to state, multiple times, that she only identified Johnson because she did not know very many black people. As a result, the district court did not err when, pursuant to K.S.A. 60-422, it admitted Clark's previous statements to police as prior inconsistent statements.

*Jury instructions*

Johnson also argues that the district court erred when it instructed the jury that its verdict "must be founded entirely upon the evidence admitted and the law as given in the jury instructions." To analyze jury instruction issues, appellate courts follow a three-step process:

> "(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

As noted above, Johnson argues that the district court erred when it issued Jury Instruction 25 which stated that the jury's verdict "must be founded entirely upon the evidence admitted and the law as given in [the jury] instructions." The State counters by arguing that Johnson requested the exact language that he is now objecting to and therefore his appeal is barred by the invited error doctrine.

Under the invited error doctrine, "a party may not invite or prompt error in a case and then complain of that error as a ground for reversing an adverse judgment." *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013). This well-established rule, based on the common-sense notion that parties "cannot complain to an appellate court

12

about their own conduct at trial," applies to both civil and criminal cases. 48 Kan. App. 2d at 531.

In criminal cases, this doctrine often arises in the context of jury instructions when a party requests a specific, legally infelicitous instruction, which the district court gives, and then tries to complain on appeal that the instruction was given in error when the case turns out badly. 48 Kan. App. 2d at 531. However, in light of the invited error doctrine, Kansas courts consistently hold that "[w]hen [a] defendant's requested instruction is given to the jury, the defendant cannot complain [that] the requested instruction was error on appeal." *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011).

In this case, Johnson argues that Jury Instruction 25, which states that the jury's verdict "must be founded entirely upon the evidence admitted and the law as given in [the jury] instructions," was given in error. However, as the State correctly notes, the exact language that Johnson complains about on appeal was included in the jury instructions that he himself submitted to the district court. As such, the invited error doctrine bars Johnson from bringing an appeal on this issue and it should not be considered by the court. See *Bailey*, 292 Kan. at 459 ("When [a] defendant's requested instruction is given to the jury, the defendant cannot complain [that] the request instruction was error on appeal.").

But even if we chose to ignore the clear application of the invited error rule in this case, Johnson would still not prevail on the merits of his contention. Since Johnson did not object to this instruction before the district court, the standard of our review is whether the instruction was clearly erroneous. See *State v. Adams*, 294 Kan. 171, 183, 273 P.3d 718 (2012). To determine whether an instruction was clearly erroneous, we must first determine:

"[W]hether the instruction was erroneous, which is a legal question subject to de novo review. If the instruction was erroneous, the court then determines whether it is firmly convinced that the jury would have reached a different verdict without the error, in which case reversal is required. Reversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

As we have noted above, Johnson argues that it was error for the district court to instruct the jury that its verdict "must be founded entirely upon the evidence admitted and the laws given in [the jury] instructions" because that instruction negates the jury's right to nullify the verdict. The State counters by arguing that this issue has been considered and rejected by this court multiple times, most recently in the unpublished decision of *State v. Boothby*, No. 116,505, 2018 WL 793342, at *5 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* March 12, 2018.

Jury nullification occurs when a jury knowingly renders a verdict that is contrary to either the evidence or the law and is defined as:

"'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008) (quoting Black's Law Dictionary 875 [8th ed. 2004]).

However, the Kansas Supreme Court has expressly prohibited district courts from giving jury nullification instructions. *State v. McClanahan*, 212 Kan. 208, 217, 510 P.2d 153 (1973) (although jury can "disregard both the rules of law and the evidence to acquit a defendant, it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon"); see *State v. Naputi*, 293 Kan. 55, 66, 260

14

P.3d 86 (2011) ("It is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be.").

Since jurors are supposed to accept and apply the rules given to them in the jury instructions, coupled with the fact that the district court was barred from giving a nullification instruction, it is clear that the instructions given in this case were not given in error and in fact correctly stated that law. See *Boothby*, 2018 WL 793342, at *5 (rejecting exact argument raised by Johnson in this appeal); *State v. Trotter*, No. 114,743, 2017 WL 3668908, at *3-4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 993 (2018) (same); *State v. Toothman*, No. 114,944, 2017 WL 2494953, at *11 (Kan. App. 2017) (unpublished opinion), *rev. granted* 307 Kan. 993 (2018) (same); *State v. Moss*, No. 113,034, 2016 WL 3856824, at *15 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1327 (2017) (same).

Because there was clearly no error in the jury instructions, it is unnecessary to reach the second element of the clear error analysis. In short, we find Johnson's complaint about Jury Instruction 25 to be without merit.

Affirmed.